**NUNZIATO BUCKLEY WEBER**
Tom A. Nunziato, Esq. (CA Bar No. 68271)
Illece Buckley Weber, Esq. (CA Bar No. 130645)
11355 West Olympic Blvd., 1st Floor
Los Angeles, California 90064
Telephone: (310) 444-3201; Facsimile: (310) 444-3204

**LEVIN & ASSOCIATES CO., L.P.A.**
Joel Levin, Esq. (OH Bar No. 0010671)
Aparesh Paul, Esq. (OH Bar No. 0077119)
The Tower At Erieview, Suite 1100
1301 East 9th Street
Cleveland, Ohio 44114-1800
Telephone: (216) 928-0600; Facsimile: (216) 928-0016

Attorneys for Defendants Douglas Furth, Millennium Consulting Group, Inc.,
Mark Fixler, JAG Enterprises, Michel Attias, Brendon Attias, Timothy Garlin,
Marc Bernstein, Comprehensive Financial Services LLC, The Signature Fund,
Signature Management LLC and James Fixler

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| GWS TECHNOLOGIES, INC. a Delaware, formerly FIRST RESPONDER PRODUCTS, INC., a Delaware corporation, | Case No.  SACV08-00586 CJC (PLAx) |
| Plaintiffs, | The Honorable Cormac J. Carney |
| v. | Magistrate Judge Paul L. Abrams |
| DOUGLAS G. FURTH, et al. | **ANSWER AND FIRST AMENDED COUNTERCLAIMS OF MICHEL ATTIAS AND BRENDON ATTIAS** |
| Defendants. | |
| And Related/Consolidated Counterclaims, Crossclaims and Third-Party Claims | |

Now come Defendants Michel Attias and Brendon Attias (collectively

"Defendants") and for their Answer and First Amended Counterclaims against

Plaintiff GWS Technologies, Inc. ("GWS") states as follows:

---

## JURISDICTION AND VENUE

1. Defendants deny the allegations contained in Paragraph 1 of the SAC ("SAC").

2. Defendants deny the allegations contained in Paragraph 2 of the SAC.

3. Defendants deny the allegations contained in Paragraph 3 of the SAC.

## NATURE OF THE ACTION

4. To the extent there are any factual allegations against Defendants in Paragraph 4 of the SAC, Defendants deny the same.

## PARTIES TO THE ACTION

5. Defendants deny for want of knowledge the allegations contained in Paragraph 5 of the SAC.

6. Defendants admit that Furth is an individual residing in the State of Ohio but deny for want of knowledge all remaining allegations contained in this Paragraph and its sub-parts.

7. Defendants admit the allegations contained in Paragraph 7 of the SAC.

8. Defendants deny for want of knowledge the allegations contained in Paragraph 8 of the SAC.

9. Defendants admit the allegations contained in Paragraph 9 of the SAC.

10. Defendants admit the allegations contained in Paragraph 10 of the SAC.

11. Defendants admit the allegations contained in Paragraph 11 of the SAC.

12. Defendants admit that Bernstein resides in the State of Ohio but deny for want of knowledge the remaining allegations contained in this Paragraph of the SAC.

13. Defendants deny for want of knowledge the allegations contained in Paragraph 13 of the SAC.

14. Defendants deny for want of knowledge the allegations contained in Paragraph 14 of the SAC.

15. Defendants deny for want of knowledge the allegations contained in Paragraph 15 of the SAC.

16. Defendants deny for want of knowledge the allegations contained in Paragraph 16 of the SAC.

17. Defendants deny for want of knowledge the allegations contained in Paragraph 17 of the SAC.

18. Defendants deny for want of knowledge the allegations contained in Paragraph 18 of the SAC.

19. Defendants deny for want of knowledge the allegations contained in Paragraph 19 of the SAC.

20. Defendants deny for want of knowledge the allegations contained in Paragraph 20 of the SAC.

21. Defendants deny for want of knowledge the allegations contained in Paragraph 21 of the SAC.

22. Defendants admit the allegations contained in Paragraph 22 of the SAC.

23. Defendants deny the allegations contained in Paragraph 23 of the SAC, and further deny any participation in or the existence of a "Group" as alleged in this Paragraph and throughout the SAC.

24. Defendants deny for the allegations contained in Paragraph 24 of the SAC. Defendants further deny that they participated as a part of a "Group" as alleged in this Paragraph and throughout the SAC.

25. Defendants deny the allegations contained in Paragraph 25 of the SAC.

26. Defendants deny for want of knowledge the allegations contained in Paragraph 26 of the SAC.

27. Defendants deny for want of knowledge the allegations contained in

1    Paragraph 27 of the SAC.

2    28.   Defendants deny for want of knowledge the allegations contained in

3    Paragraph 28 of the SAC.

4    29.   Defendants deny for want of knowledge the allegations contained in

5    Paragraph 29 of the SAC.

6    30.   Defendants deny for want of knowledge the allegations contained in

7    Paragraph 30 of the SAC.

8    31.   Defendants deny for want of knowledge the allegations contained in

9    Paragraph 31 of the SAC.

10   32.   Defendants deny the allegations contained in Paragraph 32 of the SAC.

11   33.   Defendants deny for want of knowledge the allegations contained in

12   Paragraph 33 of the SAC.

13

14   ## GENERAL ALLEGATIONS

15   **The Company**

16   34.   Defendants deny for want of knowledge the allegations contained in

17   Paragraph 34 of the SAC.

18   35.   Defendants deny for want of knowledge the allegations contained in

19   Paragraph 35 of the SAC.

20   36.   Defendants deny for want of knowledge the allegations contained in

21   Paragraph 36 of the SAC.

22   37.   To the extent that there are factual allegations in Paragraph 37 of the SAC,

23   Defendants deny the same.

24

25   ## THE COMPANY IS FRAUDULENTLY INDUCED INTO CONTRACTS

26   **A.    The Initial Acts and Deceit by Furth and Garlin.**

27   38.   Defendants deny for want of knowledge the allegations contained in

28

---

1   Paragraph 38 of the SAC.

2   39.  Defendants deny for want of knowledge the allegations contained in

3   Paragraph 39 of the SAC.

4   40.  Defendants deny for want of knowledge the allegations contained in

5   Paragraph 40 of the SAC.

6   41.  Defendants deny for want of knowledge the allegations contained in

7   Paragraph 41 of the SAC.

8   42.  Defendants deny for want of knowledge the allegations contained in

9   Paragraph 42 of the SAC.

10   43.  Defendants deny for want of knowledge the allegations contained in

11   Paragraph 43 of the SAC.

12   44.  Defendants deny for want of knowledge the allegations contained in

13   Paragraph 44 of the SAC.

14   45.  Defendants deny for want of knowledge the allegations contained in

15   Paragraph 45 of the SAC.

16   46.  Defendants deny for want of knowledge the allegations contained in

17   Paragraph 46 of the SAC.

18   47.  Defendants deny for want of knowledge the allegations contained in

19   Paragraph 47 of the SAC.

20   48.  Defendants deny for want of knowledge the allegations contained in

21   Paragraph 48 of the SAC.

22   49.  Defendants deny for want of knowledge the allegations contained in

23   Paragraph 49 of the SAC.

24   50.  Defendants deny for want of knowledge the allegations contained in

25   Paragraph 50 of the SAC.

26   51.  Defendants deny for want of knowledge the allegations contained in

27   Paragraph 51 of the SAC.

28

52.  Defendants deny for want of knowledge the allegations contained in Paragraph 52 of the SAC, and further deny that any guarantee of funding was made to the Company.

53.  Defendants deny for want of knowledge the allegations contained in Paragraph 53 of the SAC.

**B.    The Fraud and Deceit of Defendant Bernstein.**

54.  Defendants deny for want of knowledge the allegations contained in Paragraph 54 of the SAC.

55.  Defendants deny for want of knowledge the allegations contained in Paragraph 55 of the SAC.

56.  Defendants deny for want of knowledge the allegations contained in Paragraph 56 of the SAC.

57.  Defendants admit that they did not disclose the information, whether or not it was accurate, the allegations and statements contained in Paragraph 57 of the SAC.

58.  Defendants deny the allegations contained in Paragraph 58 of the SAC.

59.  Defendants deny the allegations contained in Paragraph 59 of the SAC.

60.  Defendants deny for want of knowledge the allegations contained in Paragraph 60 of the SAC.

61.  Defendants deny for want of knowledge the allegations contained in Paragraph 61 of the SAC.

62.  Defendants deny for want of knowledge the allegations contained in Paragraph 62 of the SAC.

63.  Defendants deny for want of knowledge the allegations contained in Paragraph 63 of the SAC.

64.  Defendants deny the allegations contained in Paragraph 64 of the SAC.

**C.    The Company is Fraudulently Induced Into The Purported Agreements.**

65.    Defendants deny for want of knowledge the allegations contained in Paragraph 65 of the SAC.

66.    Defendants deny for want of knowledge the allegations contained in Paragraph 66 of the SAC.

67.    Defendants deny for want of knowledge the allegations contained in Paragraph 67 of the SAC.

68.    Defendants deny for want of knowledge the allegations contained in Paragraph 68 of the SAC.

**D.    Violations of Federal Law Based on a Re-distribution of S-8 Stock and Market Manipulation.**

69.    Defendants deny for want of knowledge the allegations contained in Paragraph 69 of the SAC.

70.    Defendants deny for want of knowledge the allegations contained in Paragraph 70 of the SAC.

71.    Defendants deny the allegations contained in Paragraph 71 of the SAC.

72.    Defendants deny the allegations contained in Paragraph 72 of the SAC.

73.    Defendants deny the allegations contained in Paragraph 73 of the SAC.

74.    Defendants admit only that Michel Attias and Mark Fixler were engaged by Furth, but deny the remaining allegations contained in Paragraph 74 of the SAC.

75.    To the extent that Paragraph 75 in the SAC contains any allegations against Defendants, Defendants deny the same.

76.    Defendants deny any participation in or existence of a "Group" as alleged in

Paragraph 76 and other Paragraphs of the SAC, deny that they violated any laws, and, otherwise deny for want of knowledge any remaining allegations in Paragraph 76 of the SAC.

77. To the extent that any factual allegations are made in Paragraph 77 against Defendants, Defendants deny the same.

78. To the extent that any factual allegations are made in Paragraph 78 against Defendants, Defendants deny the same.

79. To the extent that any factual allegations are made in Paragraph 79 against Defendants, Defendants deny the same.

80. To the extent that any factual allegations are made in Paragraph 80 against Defendants, Defendants deny the same.

81. Defendants deny for want of knowledge the allegations contained in Paragraph 81 of the SAC.

82. Defendants deny for want of knowledge the allegations contained in Paragraph 82 of the SAC.

83. Defendants deny for want of knowledge the allegations contained in Paragraph 83 of the SAC.

84. Defendants admit that Brendon Attias is the son of Michel Attias and, further, deny the remaining allegations contained in Paragraph 84 of the SAC.

85. Defendants deny the allegations contained in Paragraph 85 of the SAC.

86. Defendants deny the allegations contained in Paragraph 86 of the SAC.

87. Defendants admit that Exhibit 19 is an accurate email of what Defendant Furth wrote, but deny any other allegations contained in Paragraph 87 of the SAC.

88. Defendants deny that they participated in or acted as a "Group" as alleged in in Paragraph 88 and throughout the SAC, and further deny all allegations in

1    this Paragraph.

2    89.    To the extent that any factual allegations are made against Defendants in

3    Paragraph 89 of the SAC, Defendants deny the same.

4    90.    Defendants admit that they did not file a Schedule 13D, but deny any and all

5    other allegations contained in Paragraph 90 of the SAC.

6    91.    Defendants deny the allegations contained in Paragraph 91 of the SAC.

7

8    **E.    The Purported Contracts Were and Are Void.**

9    92.    Defendants deny for want of knowledge the allegations contained in

10    Paragraph 92 of the SAC.

11    93.    Defendants deny for want of knowledge the allegations contained in

12    Paragraph 93 of the SAC.

13    94.    Defendants deny for want of knowledge the allegations contained in

14    Paragraph 94 of the SAC.

15    95.    Defendants deny for want of knowledge the allegations contained in

16    Paragraph 95 of the SAC.

17    96.    Defendants deny for want of knowledge the allegations contained in

18    Paragraph 96 of the SAC.

19    97.    To the extent that any factual allegations are contained in Paragraph 97 of

20    the SAC, Defendants deny the same.

21    98.    Defendants deny the allegations contained in Paragraph 98 of the SAC.

22    99.    Defendants deny the allegations contained in Paragraph 99 of the SAC.

23

24    **F.    Defendants' Ongoing Acts of Fraud and Deceit.**

25    100.    Defendants deny for want of knowledge the allegations contained in

26    Paragraph 100 of the SAC.

27    101.    Defendants deny for want of knowledge the allegations contained in

28

---

1     Paragraph 101 of the SAC.

2   102.   Defendants deny that they made "repeated representations of financing"

3     and, further deny for want of knowledge any remaining allegations

4     contained in Paragraph 102 of the SAC.

5   103.   Defendants deny any participation in or existence of a "Group" as alleged in

6     Paragraph 103 and throughout the SAC, and, further, deny for want of

7     knowledge any remaining allegations contained in this Paragraph of the

8     SAC.

9   104.   Defendants deny the allegations contained in Paragraph 104 of the SAC.

10   105.   Defendants deny the participation in and existence of a "Group" as alleged

11     in Paragraph 105 and throughout the SAC, and, further, deny the allegations

12     in this Paragraph.

13   106.   Defendants deny the allegations contained in Paragraph 106 of the SAC.

14   107.   Defendants admit only that Michel Attias had communications with

15     Johnson and Reincke and deny the remaining allegations contained in

16     Paragraph 107 of the SAC.

17   108.   Defendants deny the allegations contained in Paragraph 108 of the SAC.

18   109.   Defendants deny the allegations contained in Paragraph 109 of the SAC.

19   110.   Defendants deny the allegations contained in Paragraph 110 of the SAC.

20   111.   Defendants admit only that the Company received $50,000 as a result of

21     efforts of Furth and Michel Attias who referred Cowie and Krohnfeldt to the

22     Company, but deny the remaining allegations contained in Paragraph 111 of

23     the SAC.

24   112.   Defendants deny for want of knowledge the allegations contained in

25     Paragraph 112 of the SAC.

26   113.   Defendants deny the allegations contained in Paragraph 113 of the SAC.

27   114.   Defendants deny the allegations contained in Paragraph 114 of the SAC,

28

1    and, further deny specifically that they participated or acted as a "Group" as

2    alleged in this Paragraph and throughout the SAC.

3    115.    Defendants deny for want of knowledge the allegations contained in

4    Paragraph 115 of the SAC.

5    116.    Defendants deny the allegations contained in Paragraph 116 of the SAC.

6    117.    Defendants admit only that the referenced email was sent, but deny for want

7    of knowledge the remaining allegations contained in Paragraph 117 of the

8    SAC.

9    118.    Defendants deny the allegations contained in Paragraph 118 of the SAC.

10    119.    Defendants deny the allegations contained in Paragraph 119 of the SAC.

11    120.    Defendants deny the allegations contained in Paragraph 120 of the SAC.

12    121.    Defendants deny for want of knowledge the allegations contained in

13    Paragraph 121 of the SAC.

14    122.    Defendants deny for want of knowledge the allegations contained in

15    Paragraph 122 of the SAC.

16    123.    Defendants admit there was a telephone conversation, but otherwise deny

17    the remaining allegations contained in Paragraph 123 of the SAC.  Further

18    responding, Defendants deny requesting or receiving any confidential

19    information or any information intended to be confidential.

20    124.    Defendants deny the allegations contained in Paragraph 124 of the SAC.

21    125.    Defendants deny the allegations contained in Paragraph 125 of the SAC.

22    126.    Defendants deny for want of knowledge the allegations contained in

23    Paragraph 126 of the SAC.

24    127.    Defendants deny for want of knowledge the allegations contained in

25    Paragraph 127 of the SAC.

26    128.    Defendants deny for want of knowledge the allegations contained in

27    Paragraph 128 of the SAC.

28

129. Defendants deny the allegations contained in Paragraph 129 of the SAC.

130. Defendants deny for want of knowledge the allegations contained in Paragraph 130 of the SAC.

131. Defendants deny the allegations contained in Paragraph 131 of the SAC.

132. Defendant Michel Attias admits to knowing Defendant Briggs, but otherwise denies the allegations contained in Paragraph 132 of the SAC, and further denies that there was any existence or participation in a "Group" as alleged in this Paragraph and throughout the SAC.

133. Defendants deny for want of knowledge the allegations contained in Paragraph 133 of the SAC.

134. Defendants deny for want of knowledge the allegations contained in Paragraph 134 of the SAC.

135. Defendants deny for want of knowledge the allegations contained in Paragraph 135 of the SAC.

136. Defendants admit only that some of their holdings were moved, and otherwise deny all other allegations contained in Paragraph 136 of the SAC.

137. Defendants deny for want of knowledge the allegations contained in Paragraph 137 of the SAC.

138. Defendants deny the allegations contained in Paragraph 138 of the SAC.

139. Defendants deny for want of knowledge the allegations contained in Paragraph 139 of the SAC.

140. Defendants deny for want of knowledge the allegations contained in Paragraph 140 of the SAC.

141. Defendants deny for want of knowledge the allegations contained in Paragraph 141 of the SAC.

142. Defendants deny for want of knowledge the allegations contained in Paragraph 142 of the SAC.

143. Defendants deny for want of knowledge the allegations contained in Paragraph 143 of the SAC.

144. Defendants deny for want of knowledge the allegations contained in Paragraph 144 of the SAC.

145. Defendants admit that the FAC was filed on August 7, 2008, but deny for want of knowledge the remaining allegations contained in Paragraph 145 of the SAC.

146. Defendants deny for want of knowledge the allegations contained in Paragraph 146 of the SAC.

147. Defendants deny for want of knowledge the allegations contained in Paragraph 147 of the SAC.

148. Defendants deny for want of knowledge the allegations contained in Paragraph 148 of the SAC.

149. Defendants deny the allegations contained in Paragraph 149 of the SAC.

150. Defendants deny for want of knowledge the allegations contained in Paragraph 150 of the SAC.

151. Defendants deny for want of knowledge the allegations contained in Paragraph 151 of the SAC.

152. Defendants deny for want of knowledge the allegations contained in Paragraph 152 of the SAC.

153. Defendants deny for want of knowledge the allegations contained in Paragraph 153 of the SAC.

154. Defendants deny for want of knowledge the allegations contained in Paragraph 154 of the SAC.

155. Defendants deny for want of knowledge the allegations contained in Paragraph 155 of the SAC.

156. Defendants deny for want of knowledge the allegations contained in

Paragraph 156 of the SAC.

157. Defendants deny for want of knowledge the allegations contained in Paragraph 157 of the SAC.

158. Defendants deny for want of knowledge the allegations contained in Paragraph 158 of the SAC.

159. Defendants deny for want of knowledge the allegations contained in Paragraph 159 of the SAC.

160. Defendants deny for want of knowledge the allegations contained in Paragraph 160 of the SAC.

161. Defendants deny the allegations contained in Paragraph 161 of the SAC.

162. Defendants deny the allegations contained in Paragraph 162 of the SAC.

163. Defendants deny the allegations contained in Paragraph 163 of the SAC.

164. Defendants deny the allegations contained in Paragraph 164 of the SAC.

165. Defendants deny for want of knowledge the allegations contained in Paragraph 165 of the SAC.

166. Defendants deny for want of knowledge the allegations contained in Paragraph 166 of the SAC.

167. Defendants deny the allegations contained in Paragraph 167 of the SAC.

168. Defendants deny the allegations contained in Paragraph 168 of the SAC.

## FIRST CAUSE OF ACTION

### DISGORGEMENT OF SHORT-SWING PROFITS IN VIOLATION OF SECURITIES EXCHANGE ACT OF 1934 §16(b)(15 U.S.C. 78p(b))

169. Defendants hereby incorporate as if fully restated the preceding Paragraphs of their answer herein.

170. To the extent that Paragraph 170 of the SAC contains any factual allegations against Defendants, Defendants deny the same.

171. To the extent that Paragraph 171 of the SAC contains any factual allegations against Defendants, Defendants deny the same.

172. To the extent that Paragraph 172 of the SAC contains any factual allegations against Defendants, Defendants deny the same.

173. To the extent that Paragraph 173 of the SAC contains any factual allegations against Defendants, Defendants deny the same.

174. To the extent that Paragraph 174 of the SAC contains any factual allegations against Defendants, Defendants deny the same.

175. Defendants deny the allegations contained in Paragraph 175 of the SAC.

176. Defendants deny the allegations contained in Paragraph 176 of the SAC.

177. Defendants deny the allegations contained in Paragraph 177 of the SAC.

178. Defendants deny the allegations contained in Paragraph 178 of the SAC.

179. Defendants deny the allegations contained in Paragraph 179 of the SAC.

180. Defendants deny the allegations contained in Paragraph 180 of the SAC.

181. To the extent that Paragraph 181 of the SAC contains any factual allegations against Defendants, Defendants deny the same.

182. Defendants deny the allegations contained in Paragraph 182 of the SAC.

183. Defendants deny the allegations contained in Paragraph 183 of the SAC.

184. Defendants deny the allegations contained in Paragraph 184 of the SAC.

185. Defendants deny the allegations contained in Paragraph 185 of the SAC.

186. Defendants deny the allegations contained in Paragraph 186 of the SAC.

## SECOND CAUSE OF ACTION

### INTENTIONAL OR NEGLIGENT MISREPRESENTATION - INDUCEMENT

187. Defendants hereby incorporate as if fully restated the preceding Paragraphs of their answer herein.

188. Defendants deny for want of knowledge the allegations contained in Paragraph 188 of the SAC.

189. Defendants deny for want of knowledge the allegations contained in Paragraph 189 of the SAC.

190. Defendants deny for want of knowledge the allegations contained in Paragraph 190 of the SAC.

191. Defendants deny for want of knowledge the allegations contained in Paragraph 191 of the SAC.

192. Defendants deny for want of knowledge the allegations contained in Paragraph 192 of the SAC.

193. Defendants deny for want of knowledge the allegations contained in Paragraph 193 of the SAC.

194. Defendants deny for want of knowledge the allegations contained in Paragraph 194 of the SAC.

195. Defendants deny for want of knowledge the allegations contained in Paragraph 195 of the SAC.

196. Defendants deny for want of knowledge the allegations contained in Paragraph 196 of the SAC.

197. Defendants deny for want of knowledge the allegations contained in Paragraph 197 of the SAC.

198. Defendants deny for want of knowledge the allegations contained in Paragraph 198 of the SAC.

199. Defendants deny for want of knowledge the allegations contained in Paragraph 199 of the SAC.

200. Defendants deny that they made any false representations of material fact and, otherwise deny for want of knowledge what Plaintiffs were induced into doing, and deny any remaining allegations contained in this Paragraph

of the SAC.

201. Defendants deny for want of knowledge the allegations contained in Paragraph 201 of the SAC.

202. Defendants deny the allegations contained in Paragraph 202 of the SAC.

203. Defendants deny the allegations contained in Paragraph 203 of the SAC.

204. Defendants deny the allegations contained in Paragraph 204 of the SAC.

## THIRD CAUSE OF ACTION

### CONCEALMENT OF MATERIAL FACTS - INDUCEMENT

205. Defendants hereby incorporate as if fully restated the preceding Paragraphs of their answer herein.

206. Defendants deny for want of knowledge the allegations contained in Paragraph 206 of the SAC.

207. Defendants deny for want of knowledge the allegations contained in Paragraph 207 of the SAC.

208. Defendants deny for want of knowledge the allegations contained in Paragraph 208 of the SAC.

209. Defendants deny for want of knowledge the allegations contained in Paragraph 209 of the SAC.

210. Defendants deny for want of knowledge the allegations contained in Paragraph 210 of the SAC.

211. Defendants deny for want of knowledge the allegations contained in Paragraph 211 of the SAC.

212. Defendants deny for want of knowledge the allegations contained in Paragraph 212 of the SAC.

213. Defendants deny for want of knowledge the allegations contained in Paragraph 213 of the SAC.

214. Defendants deny the allegations contained in Paragraph 214 of the SAC.

215. Defendants deny the allegations contained in Paragraph 215 of the SAC.

216. Defendants deny the allegations contained in Paragraph 216 of the SAC.

217. Defendants deny the allegations contained in Paragraph 217 of the SAC.

218. Defendants deny the allegations contained in Paragraph 218 of the SAC.

## FOURTH CAUSE OF ACTION

### PROMISE WITHOUT INTENT TO PERFORM - INDUCEMENT

219. Defendants hereby incorporate as if fully restated the preceding Paragraphs of their answer herein.

220. Defendants deny the allegations contained in Paragraph 220 of the SAC.

221. Defendants deny the allegations contained in Paragraph 221 of the SAC.

222. Defendants deny the allegations contained in Paragraph 222 of the SAC.

223. Defendants deny the allegations contained in Paragraph 223 of the SAC.

224. Defendants deny the allegations contained in Paragraph 224 of the SAC.

225. Defendants deny the allegations contained in Paragraph 225 of the SAC.

226. Defendants deny the allegations contained in Paragraph 226 of the SAC. Further responding, Defendants placed the Company in contact with many "major investors."

227. Defendants deny the allegations contained in Paragraph 227 of the SAC.

228. Defendants deny the allegations contained in Paragraph 228 of the SAC.

229. Defendants deny the allegations contained in Paragraph 229 of the SAC.

230. Defendants deny the allegations contained in Paragraph 230 of the SAC.

231. Defendants deny the allegations contained in Paragraph 231 of the SAC.

232. Defendants deny the allegations contained in Paragraph 232 of the SAC.

233. Defendants deny the allegations contained in Paragraph 233 of the SAC.

234. Defendants deny the allegations contained in Paragraph 234 of the SAC.

# FIFTH CAUSE OF ACTION

## FRAUD

235. Defendants hereby incorporate as if fully restated the preceding Paragraphs of their answer herein.

236. Defendants deny the allegations contained in Paragraph 236 of the SAC.

237. Defendants deny the allegations contained in Paragraph 237 of the SAC.

238. Defendants deny the allegations contained in Paragraph 238 of the SAC.

239. Defendants deny the allegations contained in Paragraph 239 of the SAC.

240. Defendants deny the allegations contained in Paragraph 240 of the SAC.

241. Defendants deny the allegations contained in Paragraph 241 of the SAC.

242. Defendants deny for want of knowledge the allegations against Defendants Briggs and Financial West, and otherwise deny the remaining allegations contained in Paragraph 242 of the SAC.

243. Defendants deny for want of knowledge the allegations contained in Paragraph 243 of the SAC.

244. Defendants deny for want of knowledge the allegations contained in Paragraph 244 of the SAC.

245. Defendants deny for want of knowledge the allegations against Defendants Financial West and Briggs, and otherwise deny the remaining allegations contained in Paragraph 245 of the SAC.

246. Defendants deny the allegations contained in Paragraph 246 of the SAC.

247. Defendants deny the allegations contained in Paragraph 247 of the SAC.

248. Defendants deny for want of knowledge what Plaintiff was aware or unaware of, and otherwise deny the allegations contained in Paragraph 248 of the SAC.

249. Defendants deny the allegations contained in Paragraph 249 of the SAC.

250. Defendants deny the allegations contained in Paragraph 251 of the SAC.

251. Defendants deny the allegations contained in Paragraph 252 of the SAC.

252. Defendants deny the allegations contained in Paragraph 253 of the SAC.

253. Defendants deny the allegations contained in Paragraph 253 of the SAC.

## SIXTH CAUSE OF ACTION

## CONSTRUCTIVE FRAUD

254. Defendants hereby incorporate as if fully restated the preceding Paragraphs of their answer herein.

255. Defendants deny for want of knowledge the allegations contained in Paragraph 255 of the SAC. Further responding, Defendants deny requesting or receiving any confidential information or any information intended to be confidential.

256. Defendants deny for want of knowledge the allegations contained in Paragraph 256 of the SAC.

257. Defendants deny for want of knowledge the allegations contained in Paragraph 257 of the SAC.

258. Defendants deny for want of knowledge the allegations contained in Paragraph 258 of the SAC.

259. Defendants deny for want of knowledge the allegations contained in Paragraph 259 of the SAC.

260. Defendants deny for want of knowledge the allegations contained in Paragraph 260 of the SAC.

261. Defendants deny for want of knowledge the allegations contained in Paragraph 261 of the SAC.

262. Defendants deny for want of knowledge the allegations contained in Paragraph 262 of the SAC.

263. Defendants deny for want of knowledge the allegations contained in Paragraph 263 of the SAC.

264. Defendants deny for want of knowledge the allegations contained in Paragraph 264 of the SAC.

265. Defendants deny the participation in and the existence of a "Group" as alleged in Paragraph 265 and throughout the SAC. Defendants admit that Defendant Michel Attias and Defendant Mark Fixler were engaged by Furth, but deny that Michel Attias and Mark Fixler were Furth's agents, deny that Defendants owed a duty to Plaintiff, and deny any remaining allegations contained in Paragraph 265 of the SAC.

266. Defendants deny the allegations contained in Paragraph 266 of the SAC.

267. Defendants deny the allegations contained in Paragraph 267 of the SAC.

268. Defendants deny the allegations contained in Paragraph 268 of the SAC.

269. Defendants deny the allegations contained in Paragraph 269 of the SAC.

270. Defendants deny the allegations contained in Paragraph 270 of the SAC.

## SEVENTH CAUSE OF ACTION
## CONSPIRACY TO DEFRAUD

271. Defendants hereby incorporate as if fully restated the preceding Paragraphs of their answer herein.

272. Defendants deny the allegations contained in Paragraph 272 of the SAC.

273. Defendants deny the allegations contained in Paragraph 273 of the SAC.

274. Defendants deny the allegations contained in Paragraph 274 of the SAC.

275. Defendants deny the allegations contained in Paragraph 275 of the SAC.

276. Defendants deny the allegations contained in Paragraph 276 of the SAC.

277. Defendants deny the allegations contained in Paragraph 277 of the SAC.

278. Defendants deny the allegations contained in Paragraph 278 of the SAC.

279. Defendants deny the allegations contained in Paragraph 279 of the SAC.

280. Defendants deny the allegations contained in Paragraph 280 of the SAC.

281. Defendants deny the allegations contained in Paragraph 281 of the SAC.

282. Defendants deny the allegations contained in Paragraph 282 of the SAC.

## EIGHTH CAUSE OF ACTION

### INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

283. Defendants hereby incorporate as if fully restated the preceding Paragraphs of their answer herein.

284. Defendants admit only that the Company received $50,000 as a result of the efforts of Furth and Michel Attias, but deny the remaining allegations contained in Paragraph 284 of the SAC.

285. Defendants deny for want of knowledge the allegations contained in Paragraph 285 of the SAC.

286. Defendants deny the allegations contained in Paragraph 286 of the SAC.

287. Defendants deny the allegations contained in Paragraph 287 of the SAC.

288. Defendants deny the allegations contained in Paragraph 288 of the SAC.

289. Defendants deny the allegations contained in Paragraph 289 of the SAC.

290. Defendants deny the allegations contained in Paragraph 290 of the SAC.

291. Defendants deny the allegations contained in Paragraph 291 of the SAC.

292. Defendants deny the allegations contained in Paragraph 292 of the SAC.

293. Defendants deny the allegations contained in Paragraph 293 of the SAC.

294. Defendants deny the allegations contained in Paragraph 294 of the SAC.

## NINTH CAUSE OF ACTION

### CLAIM AND DELIVERY/CONVERSION

295. Defendants hereby incorporate as if fully restated the preceding Paragraphs

1    of their answer herein.

2    296.    Defendants deny the allegations contained in Paragraph 296 of the SAC.

3    297.    Defendants deny the allegations contained in Paragraph 297 of the SAC.

4    298.    Defendants deny the allegations contained in Paragraph 298 of the SAC.

5    299.    Defendants admit that some of the stock that they held moved to different

6            dealers, but otherwise deny the allegations contained in Paragraph 299 of

7            the SAC.

8    300.    Defendants deny the allegations contained in Paragraph 300 of the SAC.

9    301.    Defendants deny the allegations contained in Paragraph 301 of the SAC.

10   302.    Defendants deny the allegations contained in Paragraph 302 of the SAC.

11

12                        **TENTH CAUSE OF ACTION**

13                              **RESCISSION**

14   303.    Defendants hereby incorporate as if fully restated the preceding Paragraphs

15           of their answer herein.

16   304.    Defendants deny for want of knowledge the allegations contained in

17           Paragraph 304 of the SAC.

18   305.    Defendants deny the participation in or existence of a "Group" as alleged in

19           Paragraph 305 and throughout the SAC and, further, deny for want of

20           knowledge the remaining allegations in this Paragraph of the SAC.

21   306.    Defendants deny the allegations contained in Paragraph 306 of the SAC.

22   307.    Defendants deny the allegations contained in Paragraph 307 of the SAC.

23   308.    Defendants deny the allegations contained in Paragraph 308 of the SAC.

24   309.    Defendants deny the allegations contained in Paragraph 309 of the SAC.

25   310.    Defendants deny for want of knowledge the allegations contained in

26           Paragraph 310 of the SAC.

27   311.    Defendants deny for want of knowledge the allegations contained in

28

Paragraph 311 of the SAC.

312. Defendants deny for want of knowledge the allegations contained in Paragraph 312 of the SAC.

## **AFFIRMATIVE DEFENSES**

313. This Court lacks subject matter jurisdiction.

314. This Court lacks personal jurisdiction over the Defendant.

315. This matter is improperly venued in this judicial district.

316. Services and/or service of process over the Defendant is improper and/or insufficient.

317. The Second Amended Complaint fails to state a claim against Defendant upon which relief can be granted.

318. The Second Amended Complaint fails to join indispensable party.

319. All of the claims in the Second Amended Complaint are subject to mandatory arbitration.

320. To the extent that the doctrines of waiver, estoppel, set off laches, accord and satisfaction, acquiescence, compromise and settlement, avoidable consequences and/or unclean hands are applicable, the claims in the Second Amended Complaint and any relief that Plaintiff may otherwise be entitled are barred or limited thereby.

321. To the extent that Plaintiff has failed to mitigate its alleged damages, any recovery to which it otherwise may be entitled is barred or limited thereby.

322. Plaintiff's own acts and/or omission caused or contributed in whole or in part to its alleged loses and, therefore, any damages and injuries alleged are barred or limited thereby.

11. Millennium is in good standing and all transactions and business activities undertaken by Millennium when its Articles of Incorporation were canceled

1   were and are valid and enforceable undertakings of Millennium.   All

2   consideration received under the "Financing Agreement" were always to go

3   to Millennium, not Furth. O.R.C. § 1701.922 bars Plaintiff's attempt to

4   render the Financing Agreement and Consulting Agreement illegal or void

5   or, otherwise bars an assertion of lack of standing for Furth and Millennium.

6   12.   Defendant reserves the right to amend his Answer to the Second Amended

7   Complaint and to add, modify or delete additional and further defenses as

8   future circumstances may warrant.

9

10   **COUNTERCLAIMS**

11   For their Counterclaim against Plaintiff, Defendant Michel Attias and

12   Brendon Attias allege as follows:

13

14   1.   Defendants incorporate herein as fully restated all Paragraphs of

15   their Answer and Affirmative Defenses.

16

17   **FACTUAL ALLEGATIONS**

18   1.   Tim Garlin was chiefly responsible for introducing Douglas Furth and

19   Plaintiff First Responder Products, Inc. ("FRPI" or the "Company"), now known

20   as GWS Technologies, Inc. ("GWSI") in early August 2007.  Messrs. Garlin and

21   Furth were together on a telephone call with FRPI principals Eric Johnson and

22   Richard Reincke.

23   2.   After that conversation, the Company through Johnson and Reincke

24   sought to retain Furth and/or Millennium Consulting Group, Inc. ("Millennium")

25   to help increase public awareness of the Company, assist in developing a liquid

26   and efficient secondary market for its stock and bring increased financing and

27   investment to the Company.

28

---

**Answer, Affirmative Defenses and Counterclaims of Michel Attias and Brendon Attias**

3.     From mid-August 2007 through early September 2007 FRPI, through Johnson and Reincke, on the one hand, and Furth and Millennium, on the other, engaged in lengthy negotiations in order to achieve a contract under which such services would be provided.

4.     During the negotiation stage, the Company, through Johnson and Reincke provided a significant amount of information to assist Furth in conducting his due diligence. On August 24, 2007, in response to Furth' s request, Johnson and Reincke provided a power point presentation titled "First Responder Products — Corporate Overview." The Company was still preparing the presentation after Furth had requested it.  None of this information provided by the Company (through Reincke and Johnson) was confidential, nor was any such information intended to be confidential.

5.     On August 27, 2007, after many requests for financial information made by Furth, the Company provided the two prior quarterly reports on Form 10-QSB and the previous year's (2006) year-end financial statement.

6.     The information provided to Furth from Reincke and Johnson showed revenues of approximately $25,000 and $50,000 and losses of approximately $180,000 and $270,000 respectively.

7.     The information provided to Furth by Reincke and Johnson in these quarterly financial statements was communicated and conveyed to Furth purportedly to convince him that the financial picture painted by quarterly reports was an accurate and truthful representation of the Company's financial position to assist him in determining whether he would accept an engagement and, if so, under what terms. None of this information was confidential or intended to be confidential.   Reincke and Johnson used these financial statements to induce Furth and Millennium to agree to certain contracts by portraying a certain financial condition.

8.    The Company's third quarter ended in July 2007, but it failed to publish its 1OQ for that quarter until September 15, 2007. During the third quarter, Company revenues only reached slightly over $60,000 while its losses ballooned to nearly $700,000, a revenue increase of only 20% while Company losses increased by over 250%. During the 4th quarter, Company losses reached over $1.7 million.

9.    In fact, Reincke and Johnson misrepresented the existing financial condition of the Company when they provided to Furth the financial statements from the second quarter when they knew that the losses were significantly higher. Providing Furth quarterly reports of the first two quarters showing portraying losses of less $200,000 is a material misrepresentation when, at the time, the losses already reached above $700,000 when Furth and Millennium agreed to their contracts.

10.    Reincke and Johnson also provided Furth information through certain pro formas for the fiscal years of 2008, 2009 and 2010 which showed projected sales of approximately $8 million, $24 million and $32 million for each successive year, with projected profits of nearly $2.8 million, $8.9 million and $12.2 million, respectively. None of this information was confidential or intended to be confidential.

11.    This information was provided to Furth by Reincke and Johnson purportedly to show reasonable figures as to the Company's near future success and profitability. Reincke and Johnson used these financial statements to induce Furth and Millennium to agree to certain contracts with the Company. The Company knew and authorized Furth and Millennium to provide this information to third-parties to effectuate the goals of the Financing and Consulting Agreements.

12.    In light of the rapid deterioration of Company financial position,

Reincke and Johnson knew that the Company's projections were unattainable. Reincke and Johnson nonetheless provided this mis-information to Furth as an inducement to reach an agreement with him and Millennium.

13.    Reincke and Johnson provided to Furth the pro formas, while knowing that the numbers therein with respect to sales and profits were never going to be attained, were false and were created, manufactured or communicated by Reincke and Johnson without any regard to the truth or falsity of the information.

14.    As a part of the negotiations, Reincke and Johnson represented to Furth that they had control of over 2 million shares of Company stock and that only 150,000 to 200,000 were in the float (available to be sold into the open market).

15.    Reincke and Johnson further represented that because they had control of the other shares, no additional shares would be put into the float.

16.    This misrepresentation of relatively few shares in the float indicated a relatively stable share price with no pre-existing downward selling pressure, which would permit Furth to have better success in implementing his program for the Company.  Reincke and Johnson made this representation to induce Furth and Millennium to agree to certain contracts.

17.    Contrary to the representations of Reincke and Johnson, nearly each week, more shares were entering the float, causing a downward pressure on the share price, resulting in significant difficulty in raising positive awareness and bringing in new investment and financing for the Company.

18.    While share value increased after Furth was engaged, existing shareholders were dumping their stock.

19.    The representations of Reincke and Johnson to Furth and Millennium that no additional FRPI shares would enter the float was intentionally false and

made by Reincke and Johnson solely to induce Furth and Millennium to enter into their agreements.

20.    The false representations were knowingly made to Furth by Reincke and Johnson in order to provide undisclosed shareholders the opportunity sell into to the market and dump their shares; Company officers (Reincke and Johnson) were thus directing a scheme where it engaged unsuspecting consultants (Furth and Millennium) to provide investor awareness services for the sole purpose of manipulating the market in order that existing shareholders could dispose of their Company shares, ultimately rendering the Company unable to secure continued financing.

22.    In the negotiation stages, Furth told Reincke and Johnson that he would engage others to assist his and Millennium's program. He specifically told Reincke and Johnson about Michel Attias and Mark Fixler.

23.    In the negotiation stages, Furth specifically told Reincke and Johnson that he and those he would engage would not participate in a 'pump and dump' scheme.

24.    In the negotiation stages, Furth specifically told Reincke and Johnson that he and those he would engage would not artificially increase the volume of shares traded.

25.    In the negotiation stages, Furth specifically told Reincke and Johnson that he and those he would engage would not guarantee any share price.

26.    In the negotiation stages, Furth specifically told Reincke and Johnson that any results of increased investor awareness and increased financing or investment required that the Company accomplish its business plan and reach its projections.

27.    In the negotiation stages, Furth specifically told Reincke and Johnson that there were no warranties or guarantees of his work and that he and those he

1  engaged worked on a best-efforts basis.

2      28.    Relying on the above-described representations by Reincke and

3  Johnson, Furth and Millennium, respectively, entered into agreements with the

4  Company on September 6, 2008.  Furth and the Company agreed to a Consulting

5  Agreement. (labeled as Exhibit 5 to Plaintiff's Second Amended Complaint).

6  Millennium and the Company agreed to a Financing Agreement (labeled as

7  Exhibit 6 to Plaintiff's Second Amended Complaint).

8      29.    Under the Consulting Agreement, Furth provided consulting services

9  pertaining to efforts to enhance Company shareholder value.

10     30.    In exchange for his services, Furth was to be paid $25,000 for the first

11 two months and one of six separate payments options as selected by the Company.

12     31.    In October 2007, the Company selected the option to provide Furth

13 1,000,000 Company free-trading shares and $10,000 per month for the duration of

14 the 12 month agreement.

15     32.    While the Company provided the 1,000,000 free trading shares in

16 October 2007, it failed to provide the $10,000 per month and the initial $25,000

17 for September 2007.

18     33.    Under the Financing Agreement, Millennium provided consulting

19 services pertaining to the Company's investment banking needs, financing and

20 corporate capitalization.

21     34.    The consulting services included introducing the Company to JAG

22 Enterprises, LLC which provided debt-financing for the Company in successive

23 months (October 2007-December 2007) of $100,000, $25,000 and $50,000.

24     35.    Under the Financing Agreement, Millennium is entitled to 5% of the

25 first $1,000,000 of any senior debt that is raised for the Company by Millennium,

26 whether on its own, through its direct contacts or through any effort it undertakes.

27 The parties subsequently agreed to change the commission to 10%.

28

36.    The Company has failed to provide Millennium its fee under the Financing Agreement.

37.    Furth and Millennium Consulting engaged Michel Attias and Mark Fixler to assist them in their respective obligations under the Consulting Agreement and Financing Agreement.

38.    Furth, with the assistance of Michel Attias and Mark Fixler, regularly and consistently performed under the Consulting Agreement; Millennium, with the assistance of Mark Fixler and Michel Attias regularly and consistently performed under the Financing Agreement.

39.    The Company was not able to secure any financial investment, largely because the Company officers were unable or unwilling to provide basic financial information and documentation to or otherwise cooperate with interested outside parties that were brought or referred by Millennium, Mark Fixler or Michel Attias.

40.    As the Company was unable to secure other financing, Millennium introduced the Company to JAG as a potential source for debt financing. Subsequently, the Company approached JAG for money.  JAG agreed to loan the Company $100,000, evidenced by an October 18, 2007 promissory note made in its favor.

41.    JAG and the Company agreed that the promissory note would be collateralized by providing JAG a priority interest in the accounts receivable delineated in the schedule, as evidenced by a security agreement of October 18, 2007.

42.    Under the security agreement, the Company was barred from disposing of, selling, or encumbering the collateral in any way without written consent of JAG.

43.    The Company again approached JAG for another loan under the note

1  in November 2007. JAG agreed to loan another $25,000 to the Company,

2  evidenced by a loan agreement of November 28, 2007.

3      44.    Above the existing interest in the accounts receivable, the Company

4  pledged to JAG 50,000 free trading shares of Company stock. The Company also

5  retained JAG as a consultant.

6      45.    The Company again approached JAG in December 2007 for a

7  subsequent loan. JAG agreed to loan $50,000 to the Company under the

8  promissory note, evidenced by a December 10, 2007 loan agreement. The

9  Company secured this subsequent loan with 100,000 free trading shares of

10  Company stock.

11      46.    Upon information and belief, the Company's securities filings do not

12  mention JAG's secured position with respect the Company's accounts receivable.

13      47.    In mid-December the Company approached JAG for financing for a

14  purchase order in the amount of $67,292.34. However, JAG communicated to the

15  Company that it had previously loaned it money on that receivable in October

16  2007.

17      48.    The Company sought to use or encumber the same collateral,

18  previously pledged to JAG, to secure two different loans, without JAG's consent,

19  which is a breach of the security agreement with JAG.

20      49.    As a part of the loan agreements, JAG was entitled to receive monthly

21  aging reports for the Company's accounts receivable.

22      50.    The December 14, 2007 accounts receivable aging report showed at

23  least three accounts receivables totaling in excess of $35,000 denominated as aged

24  between 1-30 days which were also listed on s schedule of accounts receivable

25  from October 2007. As those certain receivables were no older than 30 days in

26  December, they could not have been accounts receivable in October.

27      51.    The Company, through Reincke and Johnson, provided JAG a

28

---

1    fraudulent statement of accounts receivable which was inflated by at least $35,000

2    in order to induce JAG to execute the promissory note.

3        52.    Despite the Company's (through Reincke and Johnson) various

4    deceits, misrepresentations and breaches of contract, Furth, Mark Fixler and

5    Michel Attias continued to work on behalf of the Company to raise investor

6    awareness, under the Consulting Agreement.  Millennium, Attias and Fixler

7    continued to try to find increased financing under the Financing Agreement.

8        53.    The Company, through Reincke and Johnson has intentionally

9    misrepresented to the investing public the reasons for its reverse stock split

10   announced in the final quarter of 2008.  The Company falsely represented that

11   because of Defendants' activities in the market, specifically selling shares of

12   Company stock, the share price eroded and necessitating the reverse stock split.

13       54.    Contrary to the Company's misrepresentations, the decision to

14   approve the reverse stock split was made by the Company's shareholders in May

15   2008, before this lawsuit was filed and before any Defendant sold any Company

16   stock.  A majority of Company shareholders further approved the ratios spread of

17   the reverse split and the exercise price of the option.

18       55.    The Company has thus misrepresented to the public the reasons for

19   the reverse stock split.

20       56.    The Company has taken affirmative steps to interfere with the

21   business of Furth, CFS, Michel Attias and Brendon Attias.

22       57.    Furth and CFS had brokerage accounts at UBS.

23       58.    The Company interfered with Furth's and CFS's business dealings

24   when it falsely communicated to UBS that Furth and CFS were engaged in market

25   manipulation.

26       59.    As a result of the Company's providing false information to UBS,

27   Furth and CFS were no longer permitted to conduct business with UBS.

28

60. Furth and CFS had brokerage accounts at Peak Securities. Legent Clearing LLC is the clearinghouse for Peak Securities.

61. The Company interfered with Furth's and CFS's business dealings when it falsely communicated to Legent Clearing LLC and Peak Securities that Furth and CFS were engaged in market manipulation.

62. As a result of the Company's providing false information to Legent Clearing LLC and Peak Securities, the brokerage accounts of Furth and CFS were frozen, rendering them unable to conduct business activity resulting in financial losses.

63. The Attiases have brokerage accounts with Washington Mutual.

64. The Company interfered with the Attiases' business dealings when it falsely communicated to Washington Mutual that the Attiases were engaged in market manipulation.

65. As a result of the Company's providing false information to Washington Mutual, the brokerage accounts the Attiases were frozen, rendering them unable to conduct business activity resulting in financial losses.

66. Furth, CFS, and the Attiases have brokerage accounts with Financial West Group. National Financial Services is the clearinghouse for Financial West Group

67. The Company interfered with Furth's, CFS's and the Attiases' business dealings when it falsely communicated to Financial West Group and National Financial Services that the these Defendants were engaged in market manipulation.

68. As a result of the Company's providing false information to Financial West Group and National Financial Services, the brokerage accounts of these Defendants were frozen, rendering them unable to conduct business activity resulting in financial losses.

69.    Through its intentional public misrepresentations, including, without limitation, during Reincke's recent November 2007 interview with Small Cap Voice and in public filings with the SEC and through intentionally false communications to various brokerage houses and clearinghouses, the Company has taken affirmative steps to cause intentional harm to Defendants.

## Count 1 — Tortious Interference with Contract

70.    Defendants/Counterclaimants incorporate as if fully restated herein all Paragraphs of their Answer and all preceding Paragraphs of their Counterclaim.

71.    The Attiases had existing brokerage accounts under agreements with each of Washington Mutual and Financial West Group ("brokerage houses").

72.    The Company was aware that the Attiases held these brokerage accounts.

73.    The Company wrongfully and intentionally interfered with Attiases' contractual relations with the brokerage houses when it provided false information to them (and National Financial Services, Inc. — the clearinghouse for Financial West Group) that the Attiases and/or others with whom Attias was engaged (including Furth and CFS) conducted market manipulation with respect to the Company's stock.

74.    The information provided was false and intentionally communicated and designed to cause a breach or disruption in the Attiases' contractual relationship with the brokerage houses.

75.    As a result of the misrepresentations communicated to the brokerage houses, both brokerage houses froze the Attiases' accounts.

76.    The Company's wrongful interference with Attiases' contractual relations caused significant damages including, without limitation, freezing their ability to conduct account activity, whether purchases, sales or transfers of assets,

1  and conduct ordinary financial activity, whether personal or business, in the

2  normal course.

### Count 2 — Abuse of Process

77.    Defendants/Counterclaimants incorporate as if fully restated herein all Paragraphs of their Answer and all preceding Paragraphs of their Counterclaim.

78.    The Company contemplated and possessed ulterior motives in using the legal process and by filing its claims.  Those ulterior motives include harassing the defendants, causing financial interference to defendants' business relationships, and disseminating false and harmful information about defendants.

79.    The Company is willfully using this litigation as a vehicle (including its false assertions and prosecution of the same), whether by communicating its existence to third-parties, including regulatory authorities like FINRA and announcing it to existing or prospective Company shareholders, investors and other financing sources, to misdirect its failings and blame them on the defendants.

80.    The Company is willfully using this litigation as a tool, by publicizing it in interviews and in its securities filings to impede and disrupt defendants' existing business and financial dealings.  These uses of the litigation are outside the purposes of the litigation process and constitute abuse of process.

WHEREFORE, Defendants pray for judgment against the Plaintiff as follows:

A.    Dismissal of the Second Amended Complaint with prejudice, with all costs and attorneys fees to Plaintiff;

B.    On the counterclaim, damages in an amount to be determined at trial, but believed to be in excess of $75,000, together with interest and costs;

C.    Cost of court and attorney fees;

D.    Punitive damages; and

E.    All other relief to which this Honorable Court finds Plaintiff is

---

entitled in the interests of justice.

Respectfully submitted,

Dated: January 22, 2010

Tom A. Nunziato, Esq. (CA Bar No. 68271)
Illece Buckley Weber, Esq. (CA Bar No. 130645)
Nunziato Buckley Weber
11355 West Olympic Blvd, 1st Floor
Los Angeles, California 90064
Telephone: (310) 444-3201
Facsimile: (310) 444-3204
Email:     tan@nubuclaw.com
           ibw@nubuclaw.com


Joel Levin, Esq.
Aparesh Paul, Esq.
Levin & Associates Co., L.P.A.
The Tower at Erieview, Suite 1100
1301 East Ninth Street
Cleveland, Ohio 44114-1800
Telephone: (216) 928-0600
Facsimile (216) 928-0600
Email:     jl@levinandassociates.com
           ap@levinandassociates.com

Attorneys for Defendants-Counterclaimants

## DEMAND FOR JURY TRIAL

Defendant hereby requests a trial by jury in this action.

Illece Buckley Weber, Esq.
One of the Attorneys for Defendant

---

**Answer, Affirmative Defenses and Counterclaims of Michel Attias and Brendon Attias**

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 11355 W.

4

Olympic Boulevard, Los Angeles, California 90064.

5

On January 22, 2010, I served the foregoing items described as:

6

**ANSWER AND FIRST AMENDED COUNTERCLAIMS OF MICHEL ATTIAS AND BRENDON ATTIAS**

7

on the interested parties in this action by placing a true copy thereof enclosed in

8

sealed envelopes as follow:

9

John M. Haytol, Esq.
15455 N. Greenway-Hayden Loop C4

10

Scottsdale, Arizona 85269
E-mail: jmhaytol@yahoo.com

11

12

[XX] E-MAIL - E-mail I served said item(s) by electronic email to John M. Haytol, Esq. jmhaytol@yahoo.com; Elizabeth H. Lindh, Esq.

13

elizabeth.lindh@kyl.com

14

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

15

Executed on January 22, 2010 at Los Angeles, California.

16

17

Elvira Hernandez

18

19

20

21

22

23

24

25

26

27

28

**Answer, Affirmative Defenses and Counterclaims of Michel Attias and Brendon Attias**